# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA SPEARS, | ) 1:06cv0076 DLB |
| | ) |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## **BACKGROUND**

Plaintiff Tina Spears ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 6, 2006, the Honorable Anthony W. Ishii reassigned the case to the Honorable Lawrence J. O'Neill. On April 4, 2004, the case was reassigned to the undersigned due to the elevation of Judge O'Neill to District Court Judge.

1

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed for supplemental security income on October 4, 2002, alleging disability since April 5, 2002, due to chronic back pain. AR 67-71, 77-86. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 44, 53-56, 58. On February 15, 2005, ALJ Bert C. Hoffman held a hearing. AR 477-482. The hearing, however, was continued due to Plaintiff's three "apparent seizure-like incidents" while waiting for the hearing. AR 479. A second hearing was held on May 3, 2005. AR 483-512. He denied the claim on May 26, 2005. AR 14-24. On November 18, 2005, the Appeals Council denied review. AR 6-9.

Hearing Testimony

ALJ Hoffman held a hearing on May 3, 2005, in Fresno, California. Plaintiff appeared with her attorney, Robert Christenson. Plaintiff's husband Nathan Spears also appeared and testified. AR 483.

Plaintiff testified that she was 36 years old and completed the eighth grade. AR 486. In the last 15 years, she worked for her uncle rewiring homes and did in-home care. AR 487.

Plaintiff explained that she was in a motor vehicle accident on April 4, 2003, that "messed up [her] lower back and upper part of [her] back." AR 487. She has pain in her back and her doctors indicated that she would have pain for the rest of her life. AR 488. She has pain in her lower spine and right hip, down to her right foot, with numbness in her toes. She described the pain as constant, sharp pain and stated that the medications (Vicodin and Soma) did not help. AR 488. She reported this to her doctor, who indicated that she needed morphine pain medication but that she needed to see a surgeon to get it. AR 489. One doctor suggested surgery but Plaintiff testified that she was unable to have the surgery because no hospital in Bakersfield would accept her Blue Cross MediCAL. AR 489-490.

Plaintiff believed that she could lift nothing more than her purse. AR 491. Her daughter and her husband cook and prepare her meals because being in the kitchen could cause her to

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

overheat and have a seizure. AR 491. She testified that she drops things with her right hand and cannot lift her left hand because she gets a pain in her wrist. AR 491-492. She thought she could not stand longer than five minutes at a time because her back and hip start hurting so badly that she starts crying. AR 492. She could sit for 20 minutes at a time before needing to stand up and walk around. When she returns to sitting, she has to put her feet up. AR 492. She needs to rest every 30 minutes to take a break from walking and standing. AR 492-493.

When questioned by her attorney, Plaintiff indicated that she could walk only 50 yards because her right hip and back go out on her. AR 493. She used to walk three miles for exercise, but last did so four years ago. She also has problems controlling her bladder when she is "hurting real bad" and "wet[s] all over" herself. This happens 5-15 days a month. AR 493.

Plaintiff further testified that she started having stress-induced seizures in January 2004. AR 494. She has them about four days out of the week. She has gone to the hospital and the doctor gives her Ativan and phenobarbatol and tells her to rest. AR 495. She testified that she takes seizure medications three times per day, but that she still has seizures. AR 495. She has never missed a dose. AR 496. When counsel asked her why her blood levels are not therapeutic, she indicated that a physician's assistant told her it was because of her metabolism. AR 496-497. Her medications have been changed numerous times and her seizures are still not controlled. AR 497.

Plaintiff stated that she is a recovering drug addict and last used January 17, 2004. Her mother introduced her to methamphetamine at age 16. AR 498. She was incarcerated in May 2004 for not going to the Court-mandated meetings. AR 499.

When asked by the ALJ why she was prescribed so much Vicodin when she testified that it didn't help the pain, she stated that she told the doctors that it did not help but they just keep giving it to her. She was not asking for it. AR 499. When her doctor told her she needed to see a surgeon for morphine, she indicated that she didn't want it. AR 499.

During a normal day, her husband helps her dress because she is unable to bend over. She goes for a short walk in the yard and then sits at home and watches television. AR 501. She does not cook and does not leave the house because of her seizures. AR 501. She last went out

when her husband took her to a restaurant 10 months ago, but she had a seizure. AR 501. When questioned by the ALJ, she said she went to church two months ago and goes to counseling once a week. AR 502-503. She was excused from going twice a week last month because she had seizures at the meetings. AR 504.

Plaintiff told the ALJ that she had two Vicodin on the morning of the hearing and took one before bed the night before. When asked why she was taking them if they don't do anything, she stated that the doctor prescribes them and that's all she has for pain. AR 504. Soma, a muscle relaxer, works. AR 504.

Plaintiff's husband Nathan testified that he has known Plaintiff for seven years. She has daily seizures where she gets a confused look on her face, gets hot and sweaty, and then loses consciousness and her whole body goes into convulsions. AR 508-509. He gives her the medication himself so she does not forget to take it. AR 509. She still has seizures, but they have slowed down and they are not as violent. AR 510. He testified that she just had one and was about to have another. AR 510. He could tell by the confused look on her face. AR 511. Plaintiff's back causes her a lot of pain and the seizures increase her pain. AR 511. He helps her get dressed about half the time. AR 511.

Plaintiff then had a seizure and the hearing was closed. The ALJ stated that Plaintiff was down on the floor and was shaking for a second. She appeared to be "in a sleeping mode." AR 512.

Medical Record

In April 2002, Plaintiff began treatment at Sierra View District Hospital for right hip and back pain secondary to an automobile accident earlier in the month. X-rays taken on April 24, 2002 revealed disc disease and degenerative arthritic changes at L5-S1, and mild degenerative lipping at other levels. AR 195.

Also in April 2002, Plaintiff began seeing Oscar Hernandez, M.D. and she denied the use of drugs at that time. AR 221. During his treatment, which lasted through November 2002, he prescribed pain medication and an anti-depressant. AR 220-215.

From April 2002, through October 2002, Plaintiff was seen ten times in the Sierra View emergency room and consistently requested pain medication for her back pain or other injuries. AR 4-5, 8-9, 12, 15, 18-19, 23, 25-26, 35, 40, 47, 51.

On April 20, 2002, Plaintiff complained of shortness of breath and chest pain. X-rays revealed no significant abnormalities. AR 200.

On May 29, 2002, she under went left foot x-rays after reporting that she stepped into a hole and injured her foot. The x-rays were normal. AR 193. On August 26, 2002, Plaintiff underwent right hip and lumbar spine x-rays after indicating that she was assaulted. There were no acute fractures, although her lumbar x-ray showed moderate disc space narrowing at the L5-S1 level. AR 170. December 2002, nerve studies and an EMG on her right leg were normal and there was no lumbar radiculopathy. AR 225.

In November 2002, Plaintiff began treatment at Sequoia Family Medical Center and Tulare Health Care Center, and continued to complain of back pain and request Vicodin. AR 259-263, 265. An MRI of her lumbar spine performed on November 14, 2002, revealed right disc protrusion and degeneration at the L5-S1 level, and degeneration at T12-L1 and L1-L2. There was also minimal bulging at L2-3 and L4-5. AR 277-278. She was seen in the emergency room several times in October and November 2002, and received pain medication. AR 412, 417.

Benjamin Chang, M.D., performed a consultive orthopedic evaluation on January 18, 2003. Plaintiff complained of low back pain and indicated that she stopped working after her 2002 accident. She was able to walk normally and get on and off the examination table with no trouble. There was mild tenderness on palpation over the lower lumbar spine, but no spasm, crepitus, effusion or deformities. Motor strength was 3/5 in upper and lower extremities with no evidence of muscle atrophy. Dr. Chang diagnosed chronic low back pain, rule out lower lumbar radiculopathy. He opined that she could stand, walk and sit for about six hours in an eight hour day, and could occasionally lift 20 pounds, 10 pounds frequently. She could occasionally bend, stoop, crouch, crawl, push and pull. AR 226-229.

On February 18, 2003, State Agency physician Durell D. Sharbaugh, M.D., a board certified neurologist, completed a Residual Functional Capacity Assessment form. He opined

1  that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and/or walk
2  for about six hours, and could sit but must periodically alternate sitting and standing to relieve
3  pain.  She could frequently climb, balance and kneel, and could occasionally stoop, crouch and
4  crawl.  AR 148-155.  This opinion was affirmed on December 10, 2003.  AR 155.
5       On April 25, 2003, Plaintiff saw Charles House, Ph.D., for a consultive psychiatric
6  evaluation.  Plaintiff complained of physical pain and depression.  Plaintiff indicated that her
7  depression began when her first marriage ended and she lost her children, and continued through
8  her car accident and the death of her parents.  She said she doesn't work because she can't deal
9  with other people now and cries all the time.  Plaintiff reported that she had been clean and sober
10 for one year and has served 60 days in jail for drug use.  She reported that she dropped out of
11 school in the tenth grade because of pregnancy and has worked as a cashier.  Plaintiff indicated
12 that she bathes, cooks a little, takes walks, takes naps, watches television, goes to church and
13 plays with the kids.  AR 230-231.
14       On mental status examination, her mood was depressed and anxious and her affect was
15 constricted.  There was no evidence of an impairment in attention, concentration and memory,
16 and her intellectual level fell within the dull-normal range without evidence of a cognitive
17 impairment.  Dr. House diagnosed depressive disorder, not otherwise specified, without
18 anhedonia, without psychotic features and with suicidal ideation controlled with psychotropics,
19 polysubstance abuse in remission for one year per claimant, and personality disorder, not
20 otherwise specified, with borderline features.  He opined that Plaintiff would not likely improve
21 in the next 12 months.  She could perform simple, repetitive tasks, two- and three-step problem
22 resolution, and more complex tasks.  She could accept supervision, interact appropriately with
23 coworkers and the public, and maintain regular attendance.  AR 230-236.
24       On May 12, 2003, State Agency physician Evelyn Aquino-Caro, M.D., opined that
25 Plaintiff had mild limitations in activities of daily living, maintaining social functioning and
26 maintaining concentration, persistence or pace.  AR 248.  She could perform simple, repetitive
27 tasks.  AR 250, 252-254.
28

Plaintiff returned to Family Healthcare Network on May 21, 2003, requesting a prescription refill. She did not request any further workup for her back pain. AR 276. In June, she indicated that she needed a higher dosage. AR 274. She was given the medication and referred to an orthopedic. AR 274.

On June 22, 2003, Plaintiff sought emergency room treatment after falling five feet from a step ladder. X-rays were negative. She was prescribed Vicodin. AR 339-341. Plaintiff was seen several more times in the emergency room through September 2003, complaining of pain and requesting pain medication. AR 345, 355-356, 355-356, 365, 371-372, 377, 385, 387, 392.

On July 15, 2003, Plaintiff indicated that her pain was mild to moderate but that Vicodin provided relief. She had decreased flexion/extension and range of motion in her back. Plaintiff was referred to a neural surgeon at UCLA and given prescription refills. AR 272.

Plaintiff underwent an MRI of the lumbar spine on July 18, 2003. The test revealed moderate disc bulge at L5-S1 contiguous with the right S1 nerve root, and moderate central right paracentral disc protrusion at L4-5 that indents the thecal sac. AR 269-270. Plaintiff was given medication refills in July and August 2003. AR 266, 268.

On August 8, 2003, Plaintiff returned for prescription refill and indicated that she had to cancel her appointment at UCLA because of transportation problems. AR 266.

In December 2003, Plaintiff indicated that her medications were stolen by a friend who was helping her move. The clinician indicated that Plaintiff's prescriptions could be refilled in nine days and offered alternative medicine to help with the pain until then. Plaintiff left abruptly. AR 324.

In March 2004, Plaintiff sought treatment at Sequoia Family Medical Center for seizures. She reported experiencing three grand mal seizures on March 23, 2004. AR 321. She also reported that she used methamphetamine three weeks ago and was incarcerated for possession of drugs. AR 321. Through June 2004, Plaintiff reported very frequent seizures, but always tested below the therapeutic level for prescribed anti-seizure medications. AR 303, 308, 314, 317, 456.

On June 1, 2004, Plaintiff reportedly had a seizure in the waiting room. A clinician observed her to be sitting upright with her eyes closed. There were no signs of a seizure and she

was mentally oriented after the seizure.  When confronted, she became angry.  AR 300.  Plaintiff reported that she had 15 seizures the prior day, though the emergency room did not have any records of this.  AR 300.

On August 6, 2004, Plaintiff underwent an EEG that revealed right posterior temporal sharp activity.  This indicated the presence of focal epileptogenic activity.  Plaintiff had one episode of generalized epileptiform activity during the test.  AR 291.

On August 12, 2004, Plaintiff reported that she could not attend court mandated drug rehabilitation sessions because of her seizures.  AR 290.

Plaintiff presented to Godofredo R. Celis, M.D., on August 20, 2004, for treatment of her seizures.  She reported having 30 seizures in the prior two days.  She was alert and oriented, and sensory was intact.  Gait was normal, as was muscle strength and tone of her extremities.  He diagnosed post traumatic seizures with post ictal vascular headaches and depression, and adjusted her medications.  AR 284-285.

On September 7, 2004, an MRI of Plaintiff's lumbar spine revealed a 4.5 mm disc bulge, extending to the subarticular and foraminal regions, contiguous with the right and left S1 nerve root, and mild left L5 ganglionic compression.  AR 435-436.

On September 9, 2004, the clinician indicated that Plaintiff's seizures were controlled.  Plaintiff reported having 7 seizures on the morning of September 15, 2004.  AR 286-287.

On September 14, 2004, Plaintiff returned to Dr. Celis.  She was alert and oriented, and sensory was intact.  Gait was normal, as was tone of the extremities.  He diagnosed post traumatic seizures with post ictal vascular headaches, and intractable seizures, recommended a head CT and an EEG and adjusted her medications.  AR 282-283.

In October 2004, a clinician at Sequoia Family Medical Center noted that Plaintiff's seizures were controlled.  AR 426.

Plaintiff was examined by M. Rashidi, M.D., on November 9, 2004, for complaints of low back pain with right leg numbness and tingling.  She also complained of occasional bowel and bladder incontinence over the last three months.  Plaintiff had a grand mal seizure while in

the clinic, but her general examination was otherwise normal.[3] Neurological examination showed decreased pain sensation in the right L5-S1 dermatome. He diagnosed low back pain with radiation to the right leg, multiple degenerative changes in the back and disc herniation at L5-S1, more on the right side. He ordered testing and told Plaintiff to return for a lumbar laminectomy and fusion. AR 441-442.

Plaintiff underwent lumbar spine x-rays on November 30, 2004, that revealed multilevel degenerative disc disease, disc interval narrowing and anterior osteophytic changes. AR 438. A CT scan done on the same day revealed the same results. AR 439-440.

In December 2004 and January 2005, Plaintiff returned to the emergency room numerous times for her back pain and was given pain medications, including shots of Demerol. AR 457, 460, 463. During a December 2004 visit, Plaintiff apparently had a seizure but refused treatment. AR 468.

On February 7, 2005, Dr. Celis completed a Seizure Residual Functional Capacity Questionnaire. He indicated that he saw Plaintiff in August and September 2004, and that he diagnosed post traumatic seizure disorder, post ictal vascular headache and depression. He reported that Plaintiff has an average of 15 generalized tonic-clonic seizures, with loss of consciousness, per week. Her last three seizures were on February 7, 2005. She cannot handle stress or exertion, and suffers exhaustion, severe headaches and muscle strain after her seizures. AR 430. Dr. Celis indicated that her seizures greatly interfere with her daily activities, and that she is compliant with her medication but her seizures are not controlled. He indicated that she may be a rapid metabolizer of her medications when asked to explain any results that were below therapeutic levels. He concluded that she cannot work at heights or with power machines, cannot operate motor vehicles and could not tolerate even "low stress" jobs. She would need three unscheduled breaks of one hour each every day. These restrictions became effective in January 2004. AR 430-434.

---

[3] The notes indicate that the clinician took her blood pressure and turned around to write the results, when Plaintiff began seizing. AR 444.

Plaintiff was seen in the emergency room on February 11, 2005. Her family indicated that she had 10 "full body type" seizures that day. She began shaking while in her chair, but was oriented and awake. Her speech was slurred and she was lethargic. AR 450. Staff concluded that it was not a seizure because she did not make "tonic-clonic type movements." AR 452.

On February 24, 2005, Plaintiff went to the emergency room and complained of having ten seizures. She was observed jerking in her bed, but responded to verbal commands and had purposeful movement (moving the hair from her face). AR 447. Her anti-seizure medications were below therapeutic levels. AR 451-452, 456.

ALJ's Findings

The ALJ found that Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine. He found her seizure disorder and depressive disorder to be non-severe. After reviewing the medical evidence, he found that Plaintiff's subjective complaints were not as severe as alleged. Plaintiff has the residual functional capacity ("RFC") to occasionally lift 20 pounds, 10 pounds frequently, to sit, stand or walk up to six hours, and to occasionally stoop and crouch.[4] She could not work at heights or around unprotected machinery and could not operate motor vehicles. Using Medical-Vocational Rule 202.17, the ALJ determined that Plaintiff was not disabled. In making this conclusion, he found that her capacity for light work was not substantively compromised by her nonexertional limitations. AR 23-24.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

---

[4] In the summary of his findings, the ALJ states that Plaintiff "is able to only stoop and crouch." AR 23. In her opening brief, Plaintiff contended that the missing word "occasionally" meant that the ALJ should have consulted a Vocational Expert. In her reply, however, she concedes that the ALJ simply made a typographical error. Plaintiff also agreed with one of Defendant's arguments and therefore agrees that a VE was not necessary. This claim, then, will not be addressed by the Court.

1  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a
2  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at
3  401. The record as a whole must be considered, weighing both the evidence that supports and
4  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,
5  995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must
6  apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
7  This Court must uphold the Commissioner's determination that the claimant is not disabled if the
8  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
9  substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
10 Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[5] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)) (degenerative disc disease of the

---

[5] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

11

lumbar spine); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant range of light work.  AR 23-24.

Here, Plaintiff argues that (1) the ALJ erred in rejecting the opinion of Dr. Celis; (2) the ALJ failed to follow the "slight abnormality" standard in finding that her seizure disorder was non-severe; (3) the ALJ erred in rejecting the testimony of Nathan Spears; and (4) the ALJ failed to send Plaintiff for an updated consultive examination.

### DISCUSSION

A.    Opinion of Dr. Celis

Plaintiff argues that the ALJ erred in rejecting the February 7, 2005, opinion of Dr. Celis set forth in a Seizure Residual Functional Capacity Questionnaire.  She contends that his opinion is supported by the record.

It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985).  Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure but also on his greater opportunity to observe and know the patient as an individual.  However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751, and *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A statement by a physician indicating a claimant is "disabled" does not mean that the Secretary will concur, absent review of medical findings and other evidence. 20 C.F.R. 416.927(e).  "Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ." *Nyman v. Heckler*, 779 F.2d 528 (9th Cir. 1985).

In his opinion, the ALJ did not give any weight to Dr. Celis' February 2005 statements about the frequency and severity of claimant's seizures, or their limiting effects on her ability to

work. AR 21. He first explained that Dr. Celis' statements contained information supplied by Plaintiff, such as the frequency and severity of the seizures, and that the opinion is contradicted by other treating records showing that she was fully oriented and functional following apparent seizures. For example, Plaintiff reported in August 2004 that she had 30 seizures in the past two days, that an EEG was positive for "Grad Mal" seizures, and that she could not remember the result of a CT scan. AR 282-285. It is unclear whether he reviewed either the EEG or CT scan. In his February 2005 opinion, he noted that Plaintiff was incapable of even "low stress" jobs because "she state[d] that stress is the main precipitant for her seizures." AR 433. Although he conducted neurological examinations, he noted nothing of significance. AR 282-283, 285. It appears, then, that Dr. Celis' restrictive opinions are based mainly on Plaintiff's reports. The ALJ found Plaintiff not entirely credible and was therefore entitled to discredit Dr. Celis' opinion on that basis. *See eg. Ukolov v. Barnhart*, 420 F.3d 1002, 1005-1006 (9th Cir. 2005) (treating doctor's opinion based solely on claimant's subjective complaints insufficient for finding an impairment).

The ALJ further noted that Dr. Celis' opinion was contradicted by other treating records that questioned Plaintiff's credibility. AR 21. There are two instances in the record, in June 2004 and February 2005, where the ALJ believed that the treatment records indicated that Plaintiff feigned her seizure. AR 19, 300. The ALJ is responsible for resolving conflicts in the medical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The court must uphold the ALJ's decision where, as here, the evidence is susceptible to more than one rational interpretation. *Id.* Although Plaintiff points to evidence that she contends supports Dr. Celis' statements, the record contains numerous instances where Plaintiff's credibility was called into question, making the ALJ's conclusion a rational interpretation.

Finally, the ALJ explained that Dr. Celis completed the form more than six months after his last examination of Plaintiff and discussed her condition for periods before and after his therapeutic supervision. AR 21. For example, Dr. Celis states that his restrictions became effective in January 2004, yet his first examination of Plaintiff was in August 2004. AR 434.

"Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation ⋯ and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." Fair, 885 F.2d at 603. Plaintiff's claim is without merit and must be denied.

B.   Severity of Seizure Disorder

Next, Plaintiff contends that the ALJ erred in finding her seizure non-severe because he did not adhere to the "slight abnormality" standard set forth in SSR 96-3p.

Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if her impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404,1520(a). A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b).

An impairment or combination of impairments is found "not severe" if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basis work activities. SSR 96-3p.

In finding Plaintiff's seizure disorder non-severe, he first explained that the medical record, as discussed above, suggested that Plaintiff was exaggerating her symptoms. AR 17. Additionally, Plaintiff was prescribed medications but had never tested at a therapeutic level, so

14

that the actual severity of her condition, after the benefits of medication, is unknown. AR 17-18. In fact, there are at least two notations in the record that Plaintiff's seizures were controlled. AR 20, 287, 426. There is certainly ample evidence of an inordinate number of seizures, but the ALJ determined that Plaintiff was, to some degree, exaggerating her symptoms. *Ukolov*, 420 F.3d at 1005.

Moreover, only Dr. Celis's statements suggested seizure-related limitations, and his opinions were properly disregarded, as previously discussed. Given Plaintiff's questionable credibility and the lack of properly supported seizure-related limitations, the ALJ's determination that her disorder had no more than a minimal effect of her ability to perform basic work activities was supported by substantial evidence.[6]

C.      Testimony of Plaintiff's Husband

Plaintiff argues that the ALJ failed to give legitimate reasons for rejecting the testimony of Nathan Spears, her husband. She points to his testimony that she had daily seizures that leave her mentally confused and that he is sure she takes her medication as prescribed because he monitors her medications.

Lay witness testimony as to a claimant's symptoms is competent evidence which the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that are germane to each witness." *Id.*

Here, the ALJ set forth Mr. Spears' testimony as to Plaintiff's daily seizures, their effects, and her compliance with medication. AR 22. After setting forth the reasons that he believed that her impairments were not as limiting as alleged, he explained that Mr. Spears' testimony was not credible because it was not supported objectively in the medical record. AR 22.

Plaintiff argues that this is not a legitimate reason for rejecting his testimony, presumably because Dr. Celis indicated that Plaintiff was compliant in taking her medications and thought

---

[6] Although the ALJ found Plaintiff's seizure disorder to be non-severe, he included seizure precautions, such as precluding her from working at heights or around unprotected machinery, in her RFC on a "prophylactic basis." AR 19.

that Plaintiff was perhaps a "rapid metabolizer of her medication" in explaining her medication levels. AR 432. However, as the Court found above, the ALJ properly rejected Dr. Celis' statements and he was therefore proper in rejecting Mr. Spears' testimony on that basis. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence is a reason an ALJ may cite in rejecting lay witness testimony).

Plaintiff's argument is without merit.

D.   Consultive Examination

Finally, Plaintiff argues that the ALJ should have sent Plaintiff for an updated consultive examination and obtained a medical expert opinion regarding equivalency. In support of her argument, she alleges that there were updated medical studies that were not reviewed by a State Agency physician or evaluated by a consultive examiner. Specifically, she points to an August 2004 EEG, a September 2004 MRI and November 2004 x-rays.

It is Plaintiff's duty to prove that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); 20 C.F.R. § 404.1512. As part of this burden, the claimant must bring to the Commissioner's attention all material evidence. 20 C.F.R. § 404.1512(a). Despite Plaintiff's burden, the ALJ may, in some circumstances, request additional information or order a consultive examination. The ALJ is required to develop the record only where there is ambiguous evidence or when the record is inadequate to allow for proper evaluation. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). Similarly, the Commissioner has "broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). Some cases, however, such as those where additional evidence is necessary or ambiguous, normally require a consultive examination. *Id.*

First and foremost, there was no indication that the record was ambiguous or insufficient so as to prevent sufficient analysis. While the ALJ *disagreed* with Plaintiff's interpretation of many of the records, he did not determine that additional evidence was necessary. Therefore, his duty to develop the record was not triggered.

Second, the evidence Plaintiff points to does not change this result. The EEG, MRI and x-rays simply set forth objective medical findings, but do not suggest any resulting limitations.

16

The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Moreover, even though neither a State Agency physician nor a consultive examiner reviewed these tests, the ALJ took them into consideration. In fact, the ALJ also considered evidence submitted after the hearing. AR 20, 22.

Plaintiff's argument must be denied.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Tina Spears.

IT IS SO ORDERED.

Dated:   **April 19, 2007**             **/s/ Dennis L. Beck**
                                         UNITED STATES MAGISTRATE JUDGE